UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

JOHN DANIELS,

                          Plaintiff,


                                                              **Hon. Hugh B. Scott**

                    v.                                        10CV884

                                                              (CONSENT)

PAROLE OFFICER RALPH, et al.,                                 **Order**

                          Defendants.


Before the Court is the motion for judgment on the pleadings pursuant to Federal Rule of

Civil Procedure 12(c) (Docket No. 17[1]) by defendants Bratek, W. Mottl, "Ralph," and Mark

Smith, the remaining defendants in this action (see also Docket No. 4, Order of June 2, 2011,

granting plaintiff in forma pauperis status and dismissing claims and defendants, including initial

defendant Judge Richard Kloch, hereinafter "IFP Order").  Plaintiff, an inmate in New York

State custody, is proceeding pro se in this action.  The parties consented to proceed before the

undersigned on October 28, 2011 (Docket No. 15).

Initially, responses to this motion were due by December 28, 2011, and replies by

January 10, 2012 (Docket No. 19).  This Court also granted defendants' motion to hold the

Scheduling Order (Docket No. 14) in abeyance (Docket No. 19).  As noted by defendants

(Docket No. 21), the pro se plaintiff did not respond to this motion.  This Court then reset

_____

[1]In support of the motion, defendants submit their Memorandum of Law, Docket No. 18;
Reply, Docket No. 27.  In opposition, plaintiff submits his Response (with exhibits) and
Memorandum of Law, Docket Nos. 26, 25; and a further letter reply (dated Apr. 30, 2012, filed
May 15, 2012), Docket No. 28.

briefing for defendants' motion (Docket No. 22) and canceled a status conference in light of this motion (Docket No. 24), but without response from plaintiff.  This Court then learned that plaintiff has been relocated to another facility and may not have been at his previously provided address (see text remark, Mar. 14, 2012, Court's version of docket) where prior motions and notices were sent.  Given the pro se plaintiff's failure to respond and the apparent lack of notice to him of this motion and briefing schedule, plaintiff was given an opportunity to respond to this motion, with responses due by April 13, 2012, and any reply due by April 23, 2012, and the motion then will be deemed submitted without oral argument unless otherwise determined by the Court upon review of the papers (Docket No. 24).  Plaintiff then filed a timely response (Docket Nos. 26, 25 (poor quality copy of No. 26)) and defendants replied (Docket No. 27) and the motion was deemed submitted as of April 23, 2012.

## BACKGROUND

This is a pro se civil rights action under 42 U.S.C. § 1983 in which plaintiff challenges defendants alleged "activation and malicious use of the Sex Offender Registration Act," N.Y. Correct. Law §§ 168, 168-a to 168-w ("SORA"), against him, in violation of his equal protection and due process rights under the Fourteenth Amendment (Docket No. 1, Compl.).  He also alleges that defendants violated his First and Fourteenth Amendment rights by compelling plaintiff to live in a sex offender residence, with censorship of his mail, and denial of intimate association with family members (id. at page 1).  Plaintiff expressly declares that this Complaint is not a challenge to his state conviction (id. at page 2).  Plaintiff was incarcerated at Oneida Correctional Facility ("Oneida"), then released on parole, and then re-incarcerated (id. ¶ 3). Defendant W. Mottl was a correctional counselor at Oneida (id. ¶ 14; but cf. Docket No. 18,

2

Defs. Memo. at 11 n.7 (Mottl is now assigned to Mid-State Correctional Facility)), while

defendants Bratek and "Ralph" were parole officers employed in the Buffalo office (Docket

No. 1, Compl. ¶¶ 16, 17), and defendant Mark Smith is a parole officer employed at Oneida (id.

¶ 18).

Pertinent to the pending motion, plaintiff alleges that the New York State Supreme Court,

Niagara County, was without jurisdiction to conduct a SORA proceeding against him because it

was not the "original sentencing court" (id. ¶¶ 20-30; see Docket No. 4, IFP Order, at 2), that

Niagara County Court was the proper forum (Docket No. 1, Compl. ¶ 30).  Plaintiff claims that

various defendant Division of Parole and Department of Correctional Services officials and

employees, including remaining defendants "Ralph," Bratek, Smith, and Mottl, delayed his

release from prison and, upon his release, compelled him to live at a sex offender residence that

required him to pay rent, censored his mail and denied him visitation and the right to intimate

association with family members (Docket No. 4, IFP Order at 3).  In particular, he alleges that

defendant Smith, illegally detained him beyond his April 6, 2009, release date in violation of

SORA, N.Y. Correct. Law, § 168-l(8) [cited by plaintiff as § 168.1(8)], and that he informed

Judge Kloch and Assistant Public Defender Robert Viola, defendant's trial counsel, of this

unlawful detention (Docket No. 1, Complaint ¶¶ 44-46, Ex. 13-15; Docket No. 4, IFP Order at

8).  Smith then compelled plaintiff to sign a "special condition" which provided that plaintiff

"shall not be released until the board of parole and division of parole are informed of sex

offender risk level that has been or will be established by a court . . ." (Docket No. 1, Compl.

¶ 47, Ex. 16; Docket No. 4, IFP Order at 8).

On April 23, 2009, plaintiff was advised by Mottl that he had to sign many documents that he did not have time to read and that if he refused to sign them he would not be released. Plaintiff alleges there were inaccuracies in the documents which he did not notice until he received the documents upon his release from Oneida and that Mottl had falsified information in plaintiff's institutional files in the past. (Docket No. 1, Compl. ¶¶ 56-58, Ex. 24; Docket No. 4, IFP Order at 9.) Plaintiff was released to parole on April 24, 2009. His parole release residence was to be Grace House Ministries, but because he was adjudicated a Level 3 Sex Offender, he could not reside there and he was forced by defendant Parole Officer Bratek to reside at a sex offender residence operated by the Division of Parole. (Docket No. 1, Compl. ¶ 70; Docket No. 4, IFP Order at 9.)

Plaintiff first reported to the Buffalo Parole Office on April 27, 2009, and had to meet with defendant Parole Officer "Ralph," who "has an extreme dislike" for released sex offenders, because his assigned Parole Officer, Bratek, was not available (Docket No. 1, Compl. ¶¶ 59-63; Docket No. 4, IFP Order at 9). "Ralph" compelled plaintiff to sign numerous documents unrelated to his 1980 conviction and imposed conditions on plaintiff--e.g., cannot possess a computer, cannot subscribe to premium cable movie channels, cannot be within 50 feet of stores or other places--that implied that plaintiff was a pedophile, although plaintiff's 1980 conviction did not involve a child. "Ralph" also interfered with plaintiff's ability to address specific medical concerns by compelling plaintiff to attend Mid-Erie Substance Abuse and Sex Offender Program and to use a specific Medical Managed Care Program that provided coverage for Mid-Erie. (Docket No. 1 Compl. ¶ 63; Docket No. 4, IFP Order at 9.)

4

Plaintiff claims that, while at the sex offender residence, he had to pay rent, no females visitors were allowed and all visitation was precluded after 9:00 pm; it was a "prison-like environment." Plaintiff was forced by the Division of Parole and defendants "Ralph" and Bratek to reside in Buffalo, despite the fact that his crimes had been committed in Niagara Falls, he hailed from Niagara Falls and his family resided in Niagara Falls. (Docket No. 1, Compl. ¶¶ 71-74; Docket No. 4, IFP Order at 9-10.) Plaintiff was later given a 16-month parole violation for having a woman spend the night at his residence; a residence at which he claims he should not have been forced to reside. (Docket No. 1, Compl. ¶¶ 76-77; Docket No. 4, IFP Order at 10.)

Plaintiff seeks a declaratory judgment that each of the defendants conspired to violate his constitutional rights and compensatory and punitive damages for the alleged knowing and willful violation of his constitutional rights to due process, equal protection, and intimate association with family members (see Docket No. 4, IFP Order at 12).

Plaintiff moved for leave to proceed in forma pauperis (Docket No. 2) and this Court granted leave but in doing so dismissed claims against several of the defendants, leaving claims against defendants parole officers "Ralph", Bratek, Mark Smith, and Mottl (Docket No. 4, IFP Order at 15-28). These remaining defendants answered (Docket No. 12).

*Defense Motion for Judgement*

Moving defendants first argue that plaintiff has not adequately plead a conspiracy (Docket No. 18, Defs. Memo. at 6-7). As for each individual movant, they argue that plaintiff has failed to state a claim against any of them (id. at 7-16).

As for Bratek, plaintiff's allegations do not allege an infringement of a constitutional right or allege sufficient factual basis to support the asserted violation or both (id. at 8).

5

Plaintiff's placement in the residence was due to the actions of other entities and not Bratek (id.).

As a parolee, plaintiff had to adhere to the conditions of his parole including the rules of his

residence (id. at 9).  Defendants argue that placement of plaintiff in Buffalo, rather than in

Niagara Falls or Niagara County generally, was rational and reasonably related to the protection

of the community and plaintiff's lawful reintegration into society (id. at 10-11).

        As for Mottl, defendants contend that plaintiff has not asserted factual allegations to

support a constitutional violation by Mottl and what allegations that were made are conclusory

allegations.  Mottl merely provided plaintiff with the conditions of his parole without alleging

what rights were violated.  (Id. at 11-12; Docket No. 27, Defs. Reply Memo. at 2.)

        As for defendant "Ralph," defendants argue that plaintiff has not shown that a

constitutional violation has occurred (Docket No. 18, Defs. Memo. at 12-13).  Even if "Ralph"

had an "extreme dislike" of sex offenders, plaintiff did not establish any disparity in the special

conditions he received as opposed to a non-sex offender (id. at 13).  Defendants next note that

plaintiff has not explained how his medical care was interfered with when it was restricted to a

specific provider (id. at 13-14).

        As for defendant Smith, defendants argue that plaintiff's complaints about the special

condition on his sentence that permitted his continued incarceration after April 6, 2009, was not

their responsibility.  They contend that, while Smith served the special condition upon plaintiff,

he was not responsible for imposing it.  (Id. at 15.)  Defendants deny that plaintiff has alleged a

deprivation of a constitutionally protected liberty interest or a due process violation (id. at 15-16).

        In response, plaintiff argues that Mottl placed false information in his prison records

which was used in his parole hearing as a reason to deny his parole release and denied him due

process of law, concluding that this is an issue for trial (Docket No. 26, Pl. Response at 1).   He

repeats his allegation that Smith kept plaintiff beyond his release date in order to have plaintiff be

subjected to an illegal sex registration proceeding (id. at 1, Ex. 1).   "Ralph" and Bratek

compelled plaintiff to live in sex offender residence with the deprivations in that facility (id. at

1).   He claims that he had a constitutional right to accurate information in his prison file when

such information is relied upon in a parole hearing (Docket No. 26, Pl. Memo. at 1), Farinaro v.

Coughlin, 642 F. Supp. 276 (S.D.N.Y. 1986); Paine v. Barker, 595 F.2d 197 (4th Cir.), cert.

denied, 444 U.S. 925 (1979).

Defendants in reply analogize plaintiff's delayed release claim against Smith to the one

argued unsuccessfully in Doe v. Simon, 221 F.3d 137 (2d Cir. 2000).   There, the United States

Court of Appeals for the Second Circuit held that that plaintiff received the process due during a

three-month period of risk assessment done beyond his conditional release date, id. at 139.

(Docket No. 27, Defs. Reply Memo. at 2-3; see Docket No. 18, Defs. Memo. at 16.)

As for plaintiff's claims against "Ralph" and Bratek, defendants reply that plaintiff

objects to his conditions of parole and that said objection does not state a constitutional violation

or raise a federally cognizable claim (Docket No. 27, Defs. Reply Memo. at 3-4).   Defendants

conclude that plaintiff makes only conclusory allegations for many of his claims (id. at 2, 4).   As

for his equal protection claims, defendants argue that plaintiff is not a member of a suspect or

quasi-suspect classification and he was treated as a similarly situated person, as any other sex

offender would be treated (id. at 5).   As for his due process claims against these defendants, the

moving defendants argue that plaintiff does not have a liberty or property interest in the

conditions of his parole to state a due process claim (id.), see Hernandez v. Coughlin, 18 F.3d 133, 136 (2d Cir. 1994).

Plaintiff, in further reply, contends that he was denied parole in 2005 and 2007 and this provided a basis for Mottl's false information in his prison record.  Plaintiff claimed that he met a vocational training requirement but Mottl disagreed and, in retaliation, placed false information in plaintiff's inmate records in 2005 and 2007, delaying his ultimate release by two years (Docket No. 28, Pl. Reply Letter at first unnumbered page).  As for Smith, plaintiff claims that he was required to release plaintiff on April 6, 2009, despite the status of his pending risk assessment procedure, with those procedures continuing after his release (id. at second unnumbered page). As for Bratek and "Ralph," plaintiff contends that they denied him intimate association with his family in Niagara Falls by committing him to a facility in Buffalo with restrictions that precluded access to his family (id.).  Some of plaintiff's parole conditions included that he could not leave Erie County without the permission of his parole officer, he could not operate a motor vehicle or obtain a driver's license without permission , he could not leave the residence after 9 pm to 8 am the next morning (with this condition "to be strictly enforced") (Docket No. 1, Compl., Ex. 26, at page 62 of 86), not enter or be within 50 feet where minors congregate (id. at page 64 of 86), or have contact with anyone under 18 years of age without permission of his parole officer (id. at page 66 of 86).  He was also to abide by sex offender registration requirements (id. at page 65 of 86; see id., Ex. 24, at pages 59 to 60 of 86).  As a parolee, as distinct from being an inmate, plaintiff claims that he retains his First Amendment rights (Docket No. 28, Pl. Reply Letter at second to third unnumbered pages), see Anderson v. Recore, 317 F.3d 194, 197 (2d Cir. 2003), citing  Morrissey v. Brewer, 408 U.S. 471, 480 (1972).  Plaintiff claims that these defendants

treated him different from other sex offender parolees who were allowed to return to their

families (id. at third unnumbered page).  In the Complaint, plaintiff alleges that he was not

allowed female visitors, including his sister and nieces as well as barred from visitors after 9 pm,

that he could not live with his family in Niagara Falls or visit there overnight (Docket No. 1,

Compl. ¶¶ 71, 74, 72).

DISCUSSION

I.      Standard for Judgment on Pleadings

Federal Rule of Civil Procedure 12(c) provides that "after the pleadings are closed--but

early enough not to delay trial--a party may move for judgment on the pleadings."

Under Rule 12(c), all well pleaded factual allegations are assumed to be true and to be

construed in the light most favorable to the petitioner, Patel v. Searles, 305 F.3d 130, 134 (2d

Cir. 2002), cert. denied, 538 U.S. 907 (2003); Bloor v. Carro, Spanbock, Londin, Rodman &

Fass, 754 F.2d 57, 61 (2d Cir. 1985), but this presumption under Rule 12© does not apply to

conclusory allegations, BCCI Holdings v. Pharaon, 43 F. Supp. 2d 359, 364 (S.D.N.Y. 1999).  A

motion under Rule 12(c) should be granted if the moving party is entitled to judgment as a matter

of law, Burns Int'l Sec. Serv. v. International Union, 47 F.3d 14, 16 (2d Cir. 1994).

A motion for judgment on the pleadings under Rule 12(c) is governed by the standard

similar to that for a motion to dismiss for failure to state a claim under Rule 12(b)(6), wherein the

Court accepts as true all allegations in the Complaint and draws all inferences in favor of the

non-movant, here plaintiff.  Wynn v. Welch, 941 F. Supp. 28, 29 (N.D.N.Y. 1996) (Pooler, J.);

see Bloor v. Carro, Spanbock, Londin, Rodman & Fass, 754 F.2d 57 (2d Cir. 1985).  As under

Rule 12(b)(6), the Court cannot render a judgment on the pleadings dismissing a complaint under

9

Rule 12(c) unless it appears "beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." Conley v. Gibson, 355 U.S. 41, 45-46 (1957); but cf. Bell Atlantic Corp. v. Twombly, 550 U.S. 544 (2007). Like a Rule 12(b)(6) motion, a Rule 12(c) motion is addressed to the face of the pleading. The pleading is deemed to include any document attached to it as an exhibit, Fed. R. Civ. P. 10(c), or any document incorporated in it by reference. Goldman v. Belden, 754 F.2d 1059 (2d Cir. 1985). However, conclusory allegations that merely state the general legal conclusions necessary to prevail on the merits and are unsupported by factual averments will not be accepted as true. New York State Teamsters Council Health and Hosp. Fund v. Centrus Pharmacy Solutions, 235 F. Supp. 2d 123 (N.D.N.Y. 2002).

Since plaintiff is proceeding pro se, additional care must be applied in considering his pleadings. The pleading of a pro se plaintiff is to be liberally construed, see Haines v. Kerner, 404 U.S. 519 (1972) (per curiam).

> "Federal Rule of Civil Procedure 8(a)(2) requires only 'a short and plain statement of the claim showing that the pleader is entitled to relief.' Specific facts are not necessary; the statement need only '"give the defendant fair notice of what the . . . claim is and the grounds upon which it rests."' Bell Atlantic Corp. v. Twombly, [550 U.S. 544, 555], 127 S. Ct. 1955, 1964 (2007) (quoting Conley v. Gibson, 355 U.S. 41, 47 (1957)). In addition, when ruling on a defendant's motion to dismiss, a judge must accept as true all of the factual allegations contained in the complaint. Bell Atlantic Corp., supra, at [555], 127 S. Ct. 1955, 1964, (citing Swierkiewicz v. Sorema N. A., 534 U.S. 506, 508, n. 1 (2002); Neitzke v. Williams, 490 U.S. 319, 327 (1989); Scheuer v. Rhodes, 416 U.S. 232, 236 (1974))."

Erickson v. Pardus, 551 U.S. 89, 94 (2007) (per curiam). In Erickson, the Court held that the Tenth Circuit departed from the liberal pleading standards of Rule 8(a)(2) by dismissing a pro se inmate's claims.

> "The Court of Appeals' departure from the liberal pleading standards set forth by Rule 8(a)(2) is even more pronounced in this particular case because petitioner has been proceeding, from the litigation's outset, without counsel. A document filed pro se is 'to be liberally construed,' [Estelle v. Gamble, 429 U.S., 97, 106 (1976)], and 'a pro se complaint, however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers,' ibid. (internal quotation marks omitted). Cf. Fed. Rule Civ. Proc. 8(f) ("All pleadings shall be so construed as to do substantial justice")."

551 U.S. at 94; see Boykin v. KeyCorp, 521 F.3d 202, 213-14 (2d Cir. 2008). Thus, the pro se plaintiff's Complaint has to be construed "more liberally" than one filed by counsel, Boykin, supra, 521 F.3d at 214.

But even with this liberal construing of pro se pleadings, the Complaint of a pro se civil rights litigant still may be dismissed if plaintiff cannot prove any set of facts in support of his claim, see Hernandez, supra, 18 F.3d at 136; Easton v. Sundram, 947 F.2d 1011, 1015 (2d Cir. 1991), cert. denied, 504 U.S. 911 (1992).

II.     Placement in Sex Offender Residence

    A.     Parole Hearing--Claims Against Mottl

Plaintiff objects to Mottl placing false information in his inmate records which lead to plaintiff's assignment to sex offender housing. He alleges that Mottl in the past had added unspecified false information in his prison records, but plaintiff does not identify what those falsehoods were or their affect upon him or his parole conditions. He now complaints that Mottl compelled plaintiff to sign a series of documents without allowing him time to review them first, claiming that Mottl threatened that if plaintiff refused to sign them or signed under protest that plaintiff would not be released (Docket No. 1, Compl. ¶ 56, Ex. 24).

The document involved here is the sex offender registration form (id.).  The form describes the plaintiff, his offense, the parole agency that would supervise him, and his residence (id., at pages 54 of 86 to 59 of 86).  Plaintiff signed in two places, first, that he understood his duty to register and (in two places) that he knew his duties and that they were explained to him as a registering sex offender (id. at pages 58 of 86 to 59 of 86).  As defendants note, plaintiff does not connect this signing procedure used by Mottl with any violation of his rights.  He does not state how he was prejudiced by signing (or signing without noting his protest) this sex offender registration form.  The signature did not verify the correctness of the information on the form.  Plaintiff does not argue that he was not informed of his duties as a registered sex offender or claim some detriment due to his ignorance of his duties as such.  If he had objections to the registration form, plaintiff had redress through the state courts either to challenge the sex offender classification or the conditions imposed as a result of that classification.  Plaintiff's dated signature of the registration form was a requirement not imposed by Mottl but as a condition for his release as a sex offender.

Plaintiff raises in his reply that his denial of parole in 2005 and 2007 lead to him serving two extra years and false information being included in his inmate records when he was eligible for parole in 2009 (cf. Docket No. 28, Pl. Reply Letter at first unnumbered page).  But the claim at issue here is his release in 2009 and the sex offender designation and conditions imposed.  Plaintiff fails to allege how this falsehood resulted in his sex offender designation.

Therefore, defendants' motion for judgment on the pleadings as to Mottl and this ground is **granted**.

B.      Confinement in Prison Beyond Release Date--Claims Against Smith

Next, plaintiff claims that Smith deliberately kept plaintiff incarcerated beyond his

April 6, 2009, release date in order to subject him to sex offender conditions.  According to the

exhibit he attached to his response to the motion (a department Inmate Information report), his

parole hearing date was "04/1985" (Docket No. 26, Pl. Response, Ex. 1, at 2).  According to

defendants, the April 6 date was a projected early release date (Docket No. 18, Defs. Memo. at

4).  Instead, plaintiff was released on April 24, 2009, eighteen days later (Docket No. 1, Compl.

¶ 59).

Plaintiff points to Correction Law § 168-l(8) as somehow connecting the timing of his

release to his sex offender classification proceeding (see Docket No. 1, Compl. ¶ 44, Ex. 13).

Section 168-l(8) of the Correction Law provides in pertinent part that "where a court is unable to

make a determination prior to the date scheduled for a sex offender's discharge, parole, release to

post-release supervision or release, it shall adjourn the hearing until after the offender is

discharged, paroled, released to post-release supervision or released, and shall then expeditiously

complete the hearing and issue its determination."  This provision does not set the time for an

inmate's discharge, it merely sets forth when the hearing determining sex offender registration

status and is dependent upon whether the defendant has been discharged or not, see id. § 168-

l(5).

This case is similar to Doe v. Simon, 221 F.3d 137, 139 (2d Cir. 2000); there, the plaintiff

objected to a three-month delay in his release from his conditional release date due to locating a

suitable residence for that plaintiff, id.  The Second Circuit held that there was no due process

violation if plaintiff's release was delayed.  For due process, all an inmate was entitled to was

13

notice of the special condition causing the delay in the release, the reason for that condition, and

an opportunity to dispute the grounds for applying the special condition, id. at 140.

Here, Smith served plaintiff with notice of the special condition that plaintiff reside in a

specified residence, and the conditions of that residence; the imposition of those conditions may

occur prior to or subsequent to release, 9 N.Y.C.R.R. § 8003.3, and may impose conditions that

result in continuing an inmate's incarceration until the condition is fulfilled, see Matter of

Monroe v. Travis, 280 A.D.2d 675, 721 N.Y.S.2d 377 (2d Dep't) ("it is within the discretion of

the Division [of Parole] to impose the special condition of securing approved housing, even

though the condition must be satisfied before [the inmate's] request of conditional release can be

granted"), leave denied, 96 N.Y.2d 714, 729 N.Y.S.2d 441 (2001) (Docket No. 18, Defs. Memo.

at 15).

Thus, the special condition for placement in appropriate residence, and not Smith's

action, delayed plaintiff's release.  Defendants' motion for judgment on the pleadings as to this

claim is **granted**.

C.      Conditions of Parole--Claims against "Ralph" and Bratek

Plaintiff next claims that the parole officer defendants imposed various conditions upon

him, in placing him in sex offender residence, and having his supervision in Buffalo (rather than

Niagara Falls or Niagara County).   But these defendants did not establish these conditions and

should not be held responsible for their imposition.  Further, as defendants argue (Docket No. 27,

Defs. Reply Memo. at 3), plaintiff "has no constitutionally protected interest in being free of a

special condition of parole," Boddie v. Chung, No. 09CV04789, 2011WL1697965, at *1

(E.D.N.Y. May 4, 2011); Cooper v. Dennison, No. 08CV6238, 2011WL1118685, at *11

14

(W.D.N.Y. Mar. 24, 2011) (Siragusa, J.).  Parolees have no liberty interest in a particular parole condition, Boddie, supra, 2011WL1697965, at *1; Cooper, supra, 2011WL1118685, at *11 (citations omitted).

Plaintiff essentially argues that the parole conditions placing him in Buffalo rather than his native Niagara Falls implicates his rights to privacy associated with familial relationships. The right to privacy implicit in the United States Constitution has been recognized in family relationships related to marriage, procreation, abortion, and family relationships, Meyer v. Neb., 262 U.S. 390 (1923); Planned Parenthood v. Casey, 505 U.S. 833 (1992); Pierce v. Society of Sisters, 268 U.S. 510 (1925); Moore v. City of E. Cleveland, 431 U.S. 494, 503-04 (1977); see also Board of Dirs. of Rotary Int'l v. Rotary Club of Duarte, 481 U.S. 537, 545 (1987); Roberts v. U.S. Jaycees, 468 U.S. 609, 617-18, 618-20 (1984).  The interest in independence of certain important decisions from governmental interference is reflected in this right, see Paul v. Davis, 424 U.S. 693, 713 (1976).

As plaintiff recognizes (see Docket No. 28, Pl. Letter at third unnumbered page), parolees enjoy "only conditional liberty," Morrissey v. Brewer, 408 U.S. 471, 480 (1972); Moore v. Vega, 371 F.3d 110, 115 (2d Cir. 2004) during their parole term.  As noted by the United States Court of Appeals for this circuit,

> "the status of parolees in our legal system is unique; they are 'neither physically imprisoned nor free to move at will.'  United States v. Polito, 583 F.2d 48, 54 (2d Cir. 1978).  A parolee does not enjoy 'the absolute liberty to which every citizen is entitled, but only [a] conditional liberty properly dependent on observance of special parole restrictions." Morrissey v. Brewer, 408 U.S. 471, 480 (1972). Because of this unique position, a parolee 'possess[es] fewer constitutional rights' than ordinary citizens, Polito, 583 F.2d at 54,"

United States v. Thomas, 729 F.2d 120, 123 (2d Cir. 1984) (Fourth Amendment right held to be diminished for parolees).  At one extreme, had plaintiff remained an inmate, his familial relationships could have been curtailed without infringing upon his constitutional rights, see Wool v. Hogan, 505 F. Supp. 928, 932, 933 (D. Vt. 1981).  Parole is "an amelioration of punishment, it is in legal effect imprisonment," Anderson v. Corall, 263 U.S. 193, 196 (1923); Polito, supra, 583 F.2d at 54.  The conditional liberty enjoyed by the parolee is "dependent on observance of special parole restrictions," Morrissey, supra, 408 U.S. at 480; Polito, supra, 583 F.2d at 54.

Defendants argue that plaintiff did not allege that he was not allowed to meet family members elsewhere aside from his residence or the family home in Niagara Falls, thus no constitutional deprivation was alleged (Docket No. 18, Defs. Memo. at 11).

Other circuits, in upholding sex offender registration schemes, have found that even if registration has an effect on the offender's family relationships, this did not infringe upon the offender's constitutional rights because the sex offender statutes "did 'not restrict plaintiffs' freedom of action with respect to their families and therefore does not intrude upon the aspect of the right to privacy that protects an individual's independence in making certain types of important decisions,'" Doe v. Moore, 410 F.3d 1337, 1344 (11th Cir. 2005), quoting Paul P. v. Verniero, 170 F.3d 396, 405 (3d Cir. 1999); see also Doe v. Parish, No. 06-cv-0457-CVE-FHM, 2006 U.S. Dist. LEXIS 65873, at *32-34 (N.D. Okla. Sept. 14, 2006).  While there is a fundamental right to reside within a family unit, Lyng v. Castillo, 477 U.S. 635 (1986); Moore v. City of E. Cleveland, supra, 431 U.S. 494; Doe v. Parish, supra, 2006 U.S. Dist. LEXIS 65873, at *32, to be actionable one court held that the intrusion has to be intentional and the governmental

16

action must directly interfere with family relationships, <u>Doe v. Parish</u>, <u>supra</u>, 2006 U.S. Dist. LEXIS 65873, at *32-33; <u>Weems v. Little Rock Police Dep't</u>, 453 F.3d 1010, 1015 (8th Cir. 2006). The district court in <u>Doe v. Parish</u> found that "a geographical restriction limiting where a sex offender may live does not dictate with whom a sex offender may live, only that the person may not live within a certain number of feet from a school, park, or playground," 2006 U.S. Dist. LEXIS 65873, at *33 (citing cases).

Here, plaintiff is complaining about a restriction not only to a particular place but also to restrictions of whom and when he can see family members. This differs from the cases that initially challenged sex offender registration and the collateral consequences of registration, <u>see</u> <u>Doe v. Biang</u>, 494 F. Supp. 2d 880, 893 (N.D. Ill. 2006). But the infringements on plaintiff's rights are not as stark as plaintiff claims. He is not prevented from seeing family members. He can travel outside of Erie County (presumably to Niagara Falls) or visit with minor family members with permission of his parole officers. He does not allege that defendants have denied him permission for such visits. Plaintiff complains that he cannot live in the place and setting of his choice. But as a parolee he remains imprisoned during the term of the parole (<u>cf.</u> Docket No. 1, Compl. ¶ 71) and subject to the conditions and parole restrictions. Thus, plaintiff's assignment to the facility in Buffalo and the conditions on his parole which restrict (but not curtail) his familial relations does not violate his constitutional rights.

The defense motion for judgment on the pleadings as to this ground is **granted**.

D.    Conspiracy

Defendants argue that plaintiff has failed to allege a conspiracy. Such a conspiracy is seen as being legally impossible since the remaining defendants are all employees of the New

17

York State Department of Correction and Community Supervision (Docket No. 18, Defs. Memo. at 6).  The single act of a single corporation acting exclusively through its officers and employees and those acting within the scope of their respective employment is not a conspiracy, <u>Girard v. 94th and Fifth Ave. Corp.</u>, 530 F.2d 66, 70-72 (2d Cir.) (for conspiracy claim under 42 U.S.C. § 1985), <u>cert. denied</u>, 425 U.S. 974 (1976); <u>Herrmann v. Moore</u>, 576 F.2d 453, 459 (2d Cir. 1978); <u>cf.</u> <u>Samms v. Fischer</u>, No. 9:10-CV-0349, 2011 U.S. Dist. LEXIS 97810, at *44-45 & *45 n.8 (N.D.N.Y. Mar. 25, 2011) (Lowe, Mag. J.) (noting that the Second Circuit has not applied the intracorporate conspiracy doctrine in § 1983 cases, but district courts in the Circuit have[2]).  The exception to this doctrine is if the employee or official is pursuing personal interests wholly separate and apart from the entity, <u>Lukowski v. County of Seneca</u>, No. 08CV6098, 2009 U.S. Dist. LEXIS 14282, at *44 (W.D.N.Y. Feb. 24, 2009) (Telesca, J.); <u>Anemone v. Metropolitan Trans. Auth.</u>, 419 F. Supp. 2d 602, 604 (S.D.N.Y. 2006).

In <u>Samms</u>, the <u>pro se</u> inmate plaintiff alleged that defendants conspired to place and keep him in administrative segregation for two years while at Clinton Correctional Facility, but defendants argued that the intracorporate conspiracy doctrine barred his claim, 2011 U.S. Dist. LEXIS 97810, at *1-2, 44.  The District Court agreed, applying the intracorporate conspiracy doctrine (a doctrine first applied to conspiracy claims under 42 U.S.C. § 1985) to § 1983 claims, <u>id.</u> at *46.

---

[2]Citing, among other cases, <u>Lukowski v. County of Seneca</u>, No. 08CV6098, 2009 U.S. Dist. LEXIS 14282, at *42-44 (W.D.N.Y. Feb. 24, 2009) (Telesca, J.); <u>Perrin v. Canandaigua City Sch. Dist.</u>, No. 08CV6153, 2008 U.S. Dist. LEXIS 95280, at *4-5 (W.D.N.Y. Nov. 21, 2008) (Larimer, J.) (intracorporate doctrine applies to alleged conspiratorial conduct between a public entity and its employees).

Here, plaintiff's conspiracy claims are against Department of Correction and Community Supervision employees with no allegation that any defendant was acting beyond the scope of their employment, id., or was acting for the individual defendant's personal interests.  Under the intracorporate conspiracy doctrine, plaintiff has not alleged a conspiracy claim.  Thus, plaintiff's conspiracy claim **is barred**.

Alternatively, the conspiracy claims can be dismissed on the sufficiency of their pleading. "Because of the relative ease with which conspiracy allegations may be brought, and the substantial disruption to governmental function that they can cause, federal courts require 'more than conclusory allegations to avoid dismissal of a claim predicated on a conspiracy to deprive [the plaintiff] of his constitutional rights.' Polur v. Raffe, 912 F.2d 52, 56 (2d Cir. 1990) (citations omitted); see Dwares v. City of New York, 985 F.2d 94, 100 (2d Cir. 1993) ('Complaints containing only conclusory, vague, or general allegations that the defendants have engaged in a conspiracy to deprive the plaintiff of his constitutional rights are properly dismissed') . . . ," Nwanze v. Philip Morris Inc., 100 F. Supp. 2d 215, 219 (S.D.N.Y. 2000) (other citations omitted) (dismissing pro se inmate conspiracy claim to violate Eighth Amendment rights of plaintiffs in allowing tobacco products in prison).  A plaintiff has to plead facts that show an agreement or some form of joint or concerted action, Berman v. Turecki, 885 F. Supp. 528, 534 (S.D.N.Y. 1995) (citation omitted); Nwanze, supra, 100 F. Supp. 2d at 219.  While not pleading "mere evidence," the plaintiff "should make an effort to provide some 'details of time and place and the alleged effect of the conspiracy'," Dwares, supra, 985 F.2d at 100 (quoting 2A Moore's Federal Practice ¶ 8.17[6], at 8-109 to 8-110 (2d ed. 1992)); Nwanze, supra, 100 F. Supp. 2d at 219.  Plaintiff here does not assert any joint action or agreement by

defendants.  Instead, he points to a series of otherwise discrete actions by people in three cities connected solely by plaintiff's involvement and the imposition of sex offender classification upon him.

Therefore, defendants' motion (Docket No. 17) for judgment on the pleadings dismissing the conspiracy allegations is **granted**.

CONCLUSION

For the reasons stated herein, moving defendants motion for judgment on the pleadings dismissing this case (Docket No. 17) is **granted**.  The Court Clerk is instructed to close this case.

The Court hereby certifies, pursuant to 28 U.S.C. § 1915(a)(3), that any appeal from this Order would not be taken in good faith, and leave to appeal to the Court of Appeals as a poor person is denied, Coppedge v. United States, 369 U.S. 438 (1962).  Further requests to proceed on appeal as a poor person should be directed, on motion, to the United States Court of Appeals for the Second Circuit, in accordance with Rule 24 of the Federal Rules of Appellate Procedure.

So Ordered.

/s/ Hugh B. Scott

Honorable Hugh B. Scott
United States Magistrate Judge

Dated: Buffalo, New York
      June 11, 2012